IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

IMRAN NIAZI,

                Plaintiff,

v.                                                       OPINION and ORDER

MERIT MEDICAL SYSTEMS, INC. and THOMAS         22-cv-381-jdp
MEDICAL PRODUCTS, INC.,

                Defendants.

---

    The parties dispute the meaning of a settlement agreement that resolved a patent infringement case in this court. In the settlement agreement, defendants Merit Medical Systems, Inc. and Thomas Medical Products, Inc. agreed to pay plaintiff Imran Niazi royalties for products covered by Niazi's patent, including some specifically named products. Later, in a separate lawsuit, the Federal Circuit Court of Appeals issued a decision that included a claim construction of Niazi's patent under which, according to defendants, the named products are not covered by Niazi's patent. Defendants stopped paying royalties; Niazi has filed suit to enforce the agreement.

    Niazi moves for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), contending that the settlement agreement unambiguously requires defendants to pay royalties for the specifically named products, regardless of the result of the other litigation. Defendants contend that the settlement agreement is ambiguous and that the parties' intent can't be resolved on the pleadings. But defendants strongly suggest that, in light of the Federal Circuit's decision, the agreement unambiguously does not require them to pay royalties.

    A contract is ambiguous when it is amenable to multiple reasonable interpretations. For reasons explained more fully in this opinion, defendants' proffered interpretation is not a

reasonable one because it would defeat the very purpose of the settlement agreement, which was to end the litigation without resolving the disputed issue of infringement.

The court will grant Niazi's motion. The amount of royalties owed is not disputed, but the court will ask for further submissions on Niazi's entitlement to prejudgment interest.

## BACKGROUND

Niazi sued defendants here in 2016. *Niazi v. Merit Medical Systems Inc.*, Case No. 16-cv-668-jdp. The court may take judicial notice of the docket activity in the parties' lawsuit. *See H.A.L. NY Holdings, LLC v. Guinan*, 958 F.3d 627, 631 (7th Cir. 2020). Niazi was the owner of U.S. Patent 6,638,268 (the '268 patent), entitled "Catheter to cannulate the coronary sinus." *See* Dkt. 1-1, at 1. Niazi alleged that Merit Medical Systems, Inc. and its subsidiary, Thomas Medical Products, Inc., made and sold two products that infringed the '268 patent: a Coronary Sinus Guide (CSG) and an Advanced LVI. *See* No. 16-cv-668-jdp, Dkt. 29, ¶ 19. Defendants denied infringement and sought a declaratory judgment of non-infringement and invalidity of the '268 patent.

The parties entered a settlement agreement in July 2017, before the court reached the merits of the case. The settlement is on the docket of this case at Dkt. 1-1. The parties agreed to "dismiss[] with prejudice any and all claims (including counterclaims) by Niazi, Merit, and Thomas against each other." § 9.1. As part of the settlement, defendants agreed to pay Niazi a royalty of "6% of Net Sales of Licensed Merit / Thomas Products" going forward. § 7.1. Section 1.6 of the agreement defines "Licensed Merit / Thomas Products." As relevant here, "Licensed Merit / Thomas Products" means:

> [P]roducts used, manufactured, sold, or offered for sale in the
> United States or imported into the United States by Merit or

> Thomas that fall within the scope of any valid claim of the '268 Patent, including the CSG and LVI product kits accused of infringement in the Merit Action[.]

§ 1.6. Section 7.1 of the agreement refers to a "listing of current royalty-bearing Merit / Thomas products" provided in Exhibit A attached to the agreement. Exhibit A identifies by model number the "Current Licensed Merit / Thomas Products."

The parties anticipated the potential effect of future litigation in Section 7.3 of the agreement, titled "Reduction of Royalties." This section provides that if any three of the independent claims of the '268 patent asserted in the case were found invalid in a proceeding in a district court or before the U.S. Patent and Trademark Office, the royalty rate would be reduced by one-half, to a three percent royalty rate. § 7.3.1. Half of the royalty would be placed in escrow pending appeal. If all the asserted claims of the '268 patent were found invalid, the royalty rate would be reduced to zero, with the full royalty payments to be placed in escrow pending appeal. § 7.3.3.

Shortly after the case was dismissed, Niazi assigned his rights in the '268 patent to Niazi Licensing Corporation (NLC). NLC asserted the '268 patent against a different set of defendants in the U.S. District Court for the District of Minnesota. The Minnesota district court concluded that certain claim terms were indefinite and that as a result, four of the patent's independent claims were invalid as indefinite. Dkt. 6-2, at 15. The district court later granted summary judgment of non-infringement on the remaining independent claim. Dkt. 6-3, at 4.

Based on the Minnesota district court's conclusion that four independent claims of the '268 patent were invalid, Merit and Thomas invoked § 7.3.1 of the settlement agreement and reduced the royalty payments made to Niazi by half. NLC appealed the Minnesota district court's claim construction and summary judgment orders to the Court of Appeals for the

Federal Circuit. Defendants continued to pay Niazi a three percent royalty while the appeal was pending, with the other three percent placed in escrow, until the patent expired in late 2021.

The Federal Circuit overturned the district court's invalidity findings and re-instated the independent claims of the '268 patent in April 2022. Shortly after, Niazi requested payment of the royalties that had been placed in escrow pending appeal. Defendants refused to release the funds, contending that "[t]he pronouncements of the Federal Circuit make it crystal clear that the Merit products do not fall within the scope of the apparatus claims of the '268 patent." Dkt. 1-3, at 1. This lawsuit followed.

## ANALYSIS

### A. Subject matter jurisdiction

Neither party challenges jurisdiction, but the court has an independent obligation to confirm jurisdiction. *See Ware v. Best Buy Stores, L.P.*, 6 F.4th 726, 731 (7th Cir. 2021). Although this dispute arises from a patent case, it is really a state-law contract dispute, so the court does not have federal question jurisdiction. Both sides rely on 28 U.S.C. § 1332 as the basis for jurisdiction, which requires complete diversity of citizenship between the plaintiff and defendants and an amount in controversy greater than $75,000. Niazi alleged in his complaint that he seeks $441,461.64 in unpaid royalties as damages, so the amount in controversy requirement is satisfied. Dkt. 1, at 6.

At the court's direction, Niazi has submitted evidence that: (1) he considers Wisconsin his long-term home and intends to remain there, so he is a citizen of Wisconsin; (2) Merit is incorporated in Utah and its principal place of business is in Utah, so it is a citizen of Utah;

and (3) Thomas is incorporated in Pennsylvania and its principal place of business is in Pennsylvania, so it is a citizen of Pennsylvania. *See* Dkt. 24. Defendants do not contest these facts. The court is satisfied that it has jurisdiction on the basis of diversity.

In a footnote, defendants say that there is "some doubt whether Niazi has standing to assert the claims of the Complaint" because Niazi later assigned his rights in the patent to Niazi Licensing Corporation. Dkt. 15, at 4 n.4. Defendants don't apply the standard for Article III standing, which requires a plaintiff to show that he (1) suffered an injury in fact that is (2) fairly traceable to the challenged conduct of the defendant and (3) likely to be redressed by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). The court is satisfied that Nazi meets all three elements of the Article III test. If defendants mean to argue that Niazi does not have the contractual right to sue to enforce the settlement agreement, that is not a jurisdictional argument, so defendants have forfeited that argument by failing to develop it. *See Long v. Teachers' Ret. Sys. of Ill.*, 585 F.3d 344, 349 (7th Cir. 2009) (arguments raised in passing in a footnote are forfeited). In any case, Niazi himself is the party to the settlement agreement, so the court sees no reason to doubt Niazi's right to contractual relief. Defendants' concern that they might somehow also be liable to NLC under the same royalty obligation is pure speculation.

**B. Motion for judgment on the pleadings**

The substantive question in this case is whether the settlement agreement requires defendants to pay royalties on the products specifically listed in the settlement agreement regardless of whether those products are covered by the '268 patent, as Niazi contends. Defendants concede, implicitly at least, that this is one reasonable interpretation of the settlement agreement. But defendants contend that it would also be reasonable to interpret the

settlement agreement to allow defendants to avoid their royalty obligations by demonstrating that the specifically listed products are not actually covered by the '268 patent. In defendants' view, because the settlement agreement is amendable to more than one reasonable interpretation, it is ambiguous and thus the court must deny the motion for judgment on the pleadings. So the decisive issue for Niazi's motion is whether defendant's proffered interpretation is a reasonable one. If it is, that ambiguity would have to be resolved after the parties develop any evidence that might relate to the issue. *First Bank & Trust v. Firstar Info. Servs. Corp.*, 276 F.3d 317, 322 (7th Cir. 2001) (citing *Lakeshore Commercial Fin. Corp. v. Drobac*, 107 Wis. 2d 445, 319 N.W.2d 839, 843 (1982)).

### 1. Legal standards

A federal court exercising diversity jurisdiction applies the law of the forum state if there is no dispute about the choice of law. *See FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281, 283 (7th Cir. 2002). The settlement agreement does not have a choice-of-law provision, but both sides invoke Wisconsin law, so that is the law the court applies. The case calls for the application of basic principles of contract interpretation, so the choice of law is not likely to affect the outcome.

A settlement agreement is a contract. *Hart v. Artisan & Truckers Cas. Co.*, 2017 WI App 45, ¶11, 377 Wis. 2d 177, 183, 900 N.W.2d 610, 613. The primary goal of contract interpretation is to give effect to the parties' intent, as expressed in the contractual language. *Maryland Arms Ltd. P'ship v. Connell*, 2010 WI 64, ¶ 22, 326 Wis. 2d 300, 786 N.W.2d 15. The court begins with the plain language of the contract. *First Bank & Tr.*, 276 F.3d at 322 (citing *Bank of Barron v. Gieseke*, 169 Wis. 2d 437, 485 N.W.2d 426, 432 (Ct. App. 1992)). The court must construe the meaning of specific contract provisions in the context of the

contract as a whole. *Tempelis v. Aetna Cas. & Sur. Co.*, 169 Wis. 2d 1, 9, 485 N.W.2d 217, 220 (1992). A contract is ambiguous if its terms are reasonably susceptible to more than one interpretation. *Borchardt v. Wilk*, 156 Wis. 2d 420, 427, 456 N.W.2d 653, 656 (Ct. App. 1990). Whether a contract is ambiguous is a legal question. *Id.*

### 2. Analysis of the contract

Defendants rely chiefly on the definition of "Licensed Merit / Thomas Products," which is defined in two clauses as products that "fall within the scope of any valid claim of the '268 Patent, including the CSG and LVI product kits accused of infringement in the Merit Action." § 1.6. Defendants contend that their royalty obligation applies only to products that "fall within the scope of any valid claim" of the patent. Defendants don't really explain the purpose of the "including the CSG and LVI product kits" clause. Apparently, defendants regard the "including" clause as merely reflecting one of "the underlying assumptions of the Agreement." Dkt. 15, at 9.

But the "including" clause doesn't reflect any underlying assumption that the CSG and LVI product kits infringe the '268 patent. In the settlement agreement itself, defendants expressly denied that their products were covered by the patent:

> Neither the execution nor the performance of any term of this Agreement shall constitute or be construed as an admission as to the infringement, validity or enforceability of the '268 Patent. Each of the Parties has consistently taken the position that it has no liability and will incur no liability in connection with the Actions, or any claims that could have [been] asserted in the Actions.

§ 15.2. So the defendants did not agree to the payment of royalties *because* the parties had agreed or assumed that "the CSG and LVI product kits" were covered by the '268 patent. To the contrary, defendants agreed to the payment of royalties *despite* the parties' disagreement

7

over the scope of the '268 patent. The definition is inartfully worded, because the parties didn't really agree that the CSG and LVI product kits were "included" among products that were covered by the '268 patent. But a contract need not be perfectly drafted to be unambiguous.

The court's conclusion is supported by the parties' express agreement about the effect of future litigation on defendants' royalty obligation. The parties agreed to a royalty reduction or termination if claims of the '268 patent were invalidated in future litigation. *See* § 7.3. But the parties expressed no agreement to a royalty reduction or elimination based on claim constructions or infringement findings in later litigation.

The court's conclusion is also informed by the overall purpose of the settlement agreement. As the parties put it in the recitals, the purpose of settlement was to "avoid the expense, inconvenience, and uncertainty of further litigation" and to "achieve final settlement and compromise of the disputes between them." Defendants' proposed interpretation would undermine the very purpose of the settlement agreement, because that interpretation would allow defendants to revive the litigation whenever they believed they could show that the specifically named products did not infringe the patent. Defendants' interpretation cannot be squared with the purpose of the agreement, expressly stated in the recitals, which was to terminate the litigation over the accused products. An interpretation so antagonistic to the basic purpose of the agreement cannot be a reasonable one. See *Borchardt,* 156 Wis. 2d 420 at 427 (holding that "a contract should be given a construction which will make it a rational business instrument and will effectuate what appears to have been the intention of the parties.").

But what, then, of the portion of the definition in § 1.6 that would require the payment of royalties for products "that fall within the scope of any valid claim of the '268 Patent?" As

8

a general principle, a contract should be given a reasonable interpretation so that no part of the contract is surplusage. *State ex rel. Journa/Sentinel, Inc. v. Pleva*, 155 Wis. 2d 704, 711, 456 N.W.2d 359, 362 (1990). The "falls within" part of the definition is not surplusage: it simply ensures that defendants cannot avoid their royalty obligation by giving infringing products different model numbers. Of course, disputes might arise about whether the newly designated products fall within the scope of the claims of the '268 patent. But even an unambiguous settlement agreement cannot forestall all conceivable disputes about its application.

The court concludes that defendants' proposed interpretation of the settlement agreement is not a reasonable one. The settlement agreement unambiguously requires defendants to pay royalties on the products specifically identified in the settlement agreement and on any other product that falls within the scope of a valid claim of the '268 patent. The court will grant Niazi's motion for judgment on the pleadings, which means that he has prevailed on his breach of contract claim because the only products at issue are ones for which defendants undisputedly owe royalties.

3. Damages

As for Niazi's damages, defendants admit that they withheld royalty payments for sales of the CSG and LVI products, Dkt. 6, ¶ 22, and that the amount withheld was $498,178.93, *id.*, ¶ 23. Thus, there are no disputes about the amount owed to Niazi on his breach of contract claim, and defendants make no argument that awarding damages is improper if the court grants judgment for Niazi on liability.

But Niazi also seeks prejudgment interest, which "should be awarded where the amount owed is readily determinable." *United States Fire Ins. Co. v. Good Humor Corp.*, 173 Wis. 2d 804, 833, 496 N.W.2d 730, 741 (1993). It appears that Niazi is entitled to prejudgment interest

because the amount owed is readily determinable. But neither party addressed this issue in their briefs. The court will withhold a ruling on the amount of Niazi's damages and allow the parties to submit additional materials on Niazi's entitlement to prejudgment interest and the amount of that interest.

ORDER

IT IS ORDERED that:

1. Plaintiff Imran Niazi's motion for judgment on the pleadings, Dkt. 9, is GRANTED as to defendants' liability on Niazi's breach of contract claims.

2. Niazi has until July 11, 2023 to support his entitlement to prejudgment interest; defendants have until July 25 to respond.

Entered June 27, 2023.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge